# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )         Case No. 2:22-mj-55
)
CELLULAR DEVICE ASSIGNED CALL NUMBER (614) )
579-2981, WITH IMEI 311480665599335, STORED AT )
PREMISES CONTROLLED BY VERIZON )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ___New Jersey___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 247 | Damage to Religious Property |
| 18 U.S.C. § 844 | Arson |

The application is based on these facts:

See attached Affifavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Robert E. White II, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 28, 2022

_____
Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, OH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (614) 579-2981, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 311480665599335, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON | Case No. 2:22-mj-55 <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Robert E. White II being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (614) 579-2981 with International Mobile Subscriber Identity 311480665599335 ("the SUBJECT PHONE"), that is stored at premises controlled by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September 2002. Before becoming a Special Agent with the FBI, I was an officer in

the United States Navy for approximately twelve years. My duties included surface warfare, electronic warfare, and cryptologic operations. I have my Bachelor's Degree in Computer Science and my Master's Degree in Business Administration.

4. As a Special Agent, I conducted numerous public corruption, counterintelligence, and cyber investigations. I have executed numerous search warrants, including searches and seizures of computers, digital media, software, and electronically stored information. I have experience using sophisticated investigative techniques, including electronic surveillance, GPS tracking devices, telephone tracking, and wiretaps.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 247 (Damage to Religious Property), and 18 U.S.C. § 844 (Arson) have been committed by Benjamin Ruckel. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## PROBABLE CAUSE

7. The Mt. Zion Church is a non-denominational church located at 4810 Blacklick-Eastern Road NW, Liberty Township, Ohio. According to the State of Ohio Secretary of State records, the church has an active business registration. According to Brian Dupler, the Church Elder, on November 27, 2021, Mt. Zion had a congregation of approximately 25 people and growing.

2

8. On November 27, 2021, Witness No. 1 returned from work in an AEP bucket truck. According to Witness No. 1, he/she lives near the church and occasionally uses Mt. Zion's parking lot to turn around. At approximately 11:00 PM, Witness No. 1 turned around in the parking lot. Witness No. 1 noticed a vehicle parked behind the church with its lights on. Witness No. 1 observed a man walking away from the church and a flash of fire through the church window.

9. According to Witness No. 1, he/she exited his/her work truck and yelled for the man to get on the ground. In response, the man took off running through the woods behind the church, leaving a running vehicle. Witness No. 1 called 911.

10. According to Fairfield County Dispatch records, the call was received at 11:01 PM, and units from the Fairfield County Sheriff's Office (FCSO) and local Fire Departments were dispatched. Several FCSO units, including a drone operator and K-9 unit, were dispatched to the arson location to search for the subject.

11. While firefighters fought the fire, FCSO units searched for the subject. According to FCSO records, the vehicle abandoned at the scene had Ohio License Plate JCT9008 and was registered to Benjamin Ruckel of Pickerington, Ohio. Two gas cans, one kerosene can, a chainsaw, two lighters, a glove, and a cellular phone were also left at the scene.

12. According to Fairfield County Dispatch records, approximately an hour later, on November 28, 2021, at 12:08 AM, an individual was spotted sitting in a ditch about 0.75 miles south of the church. FCSO units responded to the location and took Benjamin Ruckel into custody. FCSO officers Mirandized and attempted to interview Ruckel, but he declined. Later, officers reapproached Ruckel for an interview, and Ruckel admitted to setting the fire. Officers reminded Ruckel of his Miranda Rights, and Ruckel refused to speak at that time.

13. Ruckel was taken to FCSO Detective Bureau and processed. After receiving verbal and written Miranda Advice of Rights, Ruckel agreed to be interviewed. The interview was video recorded.

14. According to Ruckel, he always wanted to burn a church. He didn't believe in God and felt that burning the church would serve as a symbol to people that they did not have to follow false religions. He was not targeting any particular denomination or ethnic group. Ruckel selected Mt. Zion because it was remote, was unlikely to have anyone inside at the time, and was far enough from neighbors that the fire would be unlikely to spread to them.

15. According to Ruckel, he brought the gas and kerosene containers from this parents' home, where he lives. He threw cinderblocks through the chapel windows, poured fuel on the drapes, and ignited them. His glove caught fire, so he had to take it off.

16. According to Ruckel, he believed that he has mental health issues. He had researched mental illness on the internet and chatted with people online about his thoughts. He has not received professional medical attention and is not taking any medication. He admitted to smoking marijuana.

17. As depicted in image "IMG_0178.JPG" taken by FCSO Deputy Bond at the arson scene, there was a cell phone in a phone holder mounted on the dash of the abandoned vehicle. The device was identified as a Galaxy A10e (model SM-S102DL). According to Samsung.com, the Galaxy A10e is equipped with the Android 9 Operating System.

18. According to FCSO records, Ruckel provided the cell phone number of (614) 579-2981 during his arrest processing. According to Accurint and CLEAR record checks, Ruckel is the user of the (614) 579-2981 phone number.

4

19. According to FBI records, Verizon is the cell service provider for was (614) 579-2981. On December 22, 2021, your affiant served a preservation request to Verizon. Several days later, Verizon confirmed the account and agreed to preserve records.

20. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. Based on my training and experience, I know that Verizon can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

22. Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data

5

estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

23. Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25. I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Robert E. White II
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January  28  , 2022

Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (614) 579-2981 with International Mobile Subscriber Identity 311480665599335 ("the Account"), that are stored at premises controlled by Verizon ("the Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **from January 1, 2021, to November 29, 2021**:

  a. The following information about the customers or subscribers of the Account:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 247 (Damage to Religious Property) and 18 U.S.C. § 844 (Arson) during the period **from January 1, 2021, to November 29, 2021.**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.